NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 13-3354

———————————

In re: COASTAL BROADCASTING SYSTEMS, INC.,
Debtor

Wilbur E. Huf, Jr.; Edwin Rosenfeld,
Appellant

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-12-cv-05682)
District Judge: Honorable Renee M. Bumb

———————————

Argued June 10, 2014

Before: AMBRO, GREENBERG, and BARRY, Circuit Judges

(Opinion filed: June 23, 2014)

Joseph M. Garemore, Esquire   (Argued)
Brown & Conner
360 Haddon Avenue
P.O. Box 539
Westmont, NJ   08108

    Counsel for Appellants

Andrea Dobin, Esquire   (Argued)
Trenk, DiPasquale, Della Fera & Sodono
427 Riverview Plaza
Trenton, NJ   08611

Ira R. Deiches, Esquire
Deiches & Ferschmann

25 Wilkins Avenue
Haddonfield, NJ   08033

Counsel for Appellee

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

This is an appeal from a decision of the District Court affirming confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code.  For the reasons that follow, we affirm in all respects.

**I.**

**A.**  Prior to December 2008 the debtor, Coastal Broadcasting Systems, Inc. ("Coastal"), was owned and operated by seven shareholders though chiefly by appellants Edwin Rosenfeld and Wilbur E. Huf, Jr.[1]  In December 2008, as part of a reorganization of the company, Coastal redeemed the shares held by six of the seven shareholders. Rosenfeld and Huf's shares were redeemed in exchange for promissory notes totaling approximately $1.7 million.  The restructuring also included a refinancing component with Coastal's secured creditor, Sturdy Savings Bank ("Sturdy"), wherein Sturdy provided loans to Coastal.

As part of the reorganization, Coastal, Huf, Rosenfeld, Sturdy, and others signed a Subordination and Intercreditor Agreement (the "Agreement").  Pursuant to the undisputed terms of the Agreement, Huf and Rosenfeld's promissory notes were

_____

[1] Messrs. Rosenfeld and Huf collectively are referred to below by their individual names or simply as the "Objectors."

subordinated to Sturdy's "Senior Debt."[2]  The Agreement further provides that, although

Huf and Rosenfeld held "Subordinated Debt," they would continue to receive payments

from Coastal and could file suit and accelerate the Subordinated Debt if Coastal fell

behind in payments.[3]

There are provisions of the Agreement that deal with Coastal's reorganization and

are the central focus of this appeal.  These provisions purportedly assign Huf and

Rosenfeld's rights to repayment and voting rights to Sturdy.  They provide in relevant

part:

> **[Section 3.1]**  [U]pon or in connection with any . . . reorganization of
> [Coastal], . . . any payment, dividend or distribution of any kind . . . which
> would otherwise be payable or deliverable with respect to the Subordinated
> Debt, shall be paid or delivered directly to [Sturdy] for application [to] . . .
> the Senior Debt . . . .
>
> **[Section 3.2]**  If any proceeding described in **Section 3.1** is commenced,
> [Sturdy] is irrevocably authorized (in its own name or in the names of
> [Rosenfeld and Huf] or otherwise), . . . to demand, sue for, collect and
> receive all such payments, dividends and distributions referred to in
> **Section 3.1**, . . . file claims, proofs of claim and take such other actions
> (including, without limitation, voting the Subordinated Debt) as it may
> deem necessary or advisable.  [Sturdy] is granted power of attorney by

[2] Section 2.1 provides in relevant part: "[Rosenfeld and Huf] subordinate[] all
Subordinated Debt and all claims and demands arising therefrom to all the Senior
Debt. . . .  Except as otherwise provided in **Section 2.2** below, until all of the Senior Debt
is paid[,] . . . [Coastal] will not make, and [Rosenfeld and Huf] will [not] demand or
accept, . . . payment of any kind . . . of all or any part of the Subordinated Debt without
the prior written consent of Bank."  App. at 49.

[3] Section 2.2 states in relevant part: "[S]cheduled payments of principal and/or interest
pursuant to the terms and conditions of the Subordinated Notes may be made by [Coastal]
and accepted by [Rosenfeld and Huf,] . . . and [Coastal's] failure to so pay upon
[Rosenfeld and Huf's] demand shall entitle [them] to demand and accelerate the
Subordinated Debt, [and] institute any court proceedings against [Coastal,] . . . to collect
any Subordinated Debt . . . ."  *Id.* at 50.

[Rosenfeld and Huf] with full power of substitution to execute and file such documentation and take any other action [Sturdy] may deem advisable to accomplish the foregoing, and to protect [Sturdy's] interest in the Subordinated Debt and its right of enforcement thereof. Such power . . . is irrevocable.

App. at 51-52.

After the 2008 reorganization, Coastal struggled to meet its liabilities, including the substantial payments to Rosenfeld, Huf, and the other former shareholders. Coastal sought relief from Huf and Rosenfeld in the rescheduling of the cash drain of the payments. They refused to bargain and instead filed an action in the Superior Court of New Jersey seeking recovery of over $1.6 million. Uncertainty over this litigation, along with moderate revenues, led Coastal in January 2011 to seek financial reorganization under Chapter 11.

**B.** Coastal's plan of reorganization included five different classes of claims. Sturdy was classified alone in Class I as a secured creditor owed over $1.2 million. The Objectors and the other former shareholders were placed in Class IV. All other general unsecured creditors were placed in Class III. The disclosure statement provided that Class III would share *pro rata* in a distribution of $100,000 but that Class IV would receive nothing per the Agreement. The plan also noted that, because all of Coastal's assets were worth less than the over $1.2 million owed to Sturdy, all unsecured claims would receive nothing in the event of a liquidation.

The Objectors made several objections to confirmation of the plan, including that: their claims were impaired (thus entitling them to vote); they were improperly classified

4

in a separate class from other unsecured creditors; and the plan was not feasible under 11 U.S.C. § 1129(a)(11). The objections did not discuss the implications of the Agreement.

In March 2012 Coastal filed a certification of balloting indicating that Class III, the only class Coastal considered impaired, had voted in favor of the plan. The Bankruptcy Court held a confirmation hearing on the plan, during which time the Court questioned (1) whether, in the event the Bankruptcy Court found the Objectors' claims were impaired, Sturdy was entitled to vote their claims under § 3.2 of the Agreement, and (2) if so, whether Sturdy actually would vote in favor of the plan. Sturdy stated that it would.

Following the hearing, the Bankruptcy Court asked the parties to address whether Sturdy was entitled to vote on behalf of the Objectors under § 3.2 of the Agreement. In response, Rosenfeld and Huf made only one argument: under the plain language of the Agreement the voting rights were not assigned to Sturdy because that provision only applied in instances of liquidation, not reorganization.

In July 2012 the Bankruptcy Court issued its opinion. The Court concluded that, while the Objectors' claims were properly classified in their own class, Coastal's plan improperly designated the claims as unimpaired. Though the claims were impaired, the Court determined that the plan could still be confirmed under § 1129(a). It reasoned that § 3.2 unambiguously entitled Sturdy to vote the Objectors' debt, and, because Sturdy had represented that it would vote the Objectors' claims in favor of the plan, Sturdy could be deemed to have voted for confirmation of the plan. The Court then confirmed the plan under § 1129(a).

5

Rosenfeld and Huf appealed to the District Court and renewed their arguments about feasibility, classification, and the plain language of the Agreement.[4]  In addition, they presented two arguments that were not before the Bankruptcy Court: (1) even if the Agreement entitled Sturdy to vote their claims, the Agreement violated the Bankruptcy Code; and (2) Sturdy could not be deemed to have voted for the plan under § 1126(g).[5]  The District Court affirmed the decision of the Bankruptcy Court on the three grounds raised previously.  The Court also held that the new arguments about the Agreement and § 1126(g) were waived and without merit.

Rosenfeld and Huf have appealed the District Court's decision.  That Court had jurisdiction pursuant to 28 U.S.C. § 158(a)(1).  We have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

## II.

**A.**  "Because the District Court in this case sat as an appellate court reviewing a final order of the Bankruptcy Court, our review of its determination is plenary." *In re O'Brien Envtl. Energy, Inc.*,  188 F.3d 116, 122 (3d Cir. 1999) (citing *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998)).  "In reviewing the decision of the

---

[4] Rosenfeld and Huf obtained new counsel for their appeals to the District Court and to our Court.  Appellate counsel appears not to have been involved in the proceedings before the Bankruptcy Court.

[5] Section 1126(g) provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."  11 U.S.C. § 1126(g).  Rosenfeld and Huf argued that because their class received nothing under the plan, they were "deemed" to have rejected the plan under § 1126(g) and Sturdy could not override that provision by voting in favor of the plan.

Bankruptcy Court, we exercise the same standard of review as the District Court, that is, we review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof." *Id.*

**B.** The Objectors raise the same arguments on appeal that were rejected by the Bankruptcy Court and the District Court: (1) the Agreement does not assign their voting rights to Sturdy; (2) the plan classification scheme was improper; and (3) the plan was not feasible. To the extent the Objectors raise other arguments not raised before the Bankruptcy Court, they are waived. *See In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). The Objectors attempt to circumvent the waiver by claiming that they had no opportunity to raise these arguments because the Bankruptcy Court only first raised the Agreement at the close of the confirmation hearing. However, that Court provided the parties the opportunity to brief whether the Agreement authorized Sturdy to vote the Objectors' shares. The Objectors filed a letter in which their sole argument was that the plain language of the Agreement applied only to a liquidation, not a reorganization.

**1.** The Bankruptcy Court and the District Court held that the Agreement plainly allowed Sturdy to vote the Objectors' claims. The enforceability of the voting assignment in the Subordination Agreement is a question of law subject to *de novo* review. *In re Handel*, 570 F.3d 140, 141 (3d Cir. 2009). The Objectors renew their argument that § 3.2 is limited to liquidation, not reorganization.[6] Coastal contends that

---

[6] The Objectors also argue (1) that because there has been no event of default of Coastal's obligations to Sturdy, they are still entitled to payments; and (2) that the Agreement was

the Agreement provides that Sturdy has the right to vote their debt in this Chapter 11 reorganization.

The Agreement must be construed under New Jersey law, *see Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001), under which contracts are interpreted according to their plain language, *see Travelers Indemnity Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010). Here the Agreement plainly allows Sturdy to vote the Objectors' debt where there is a reorganization. Section 3.2 provides that "[i]f any proceeding described in **Section 3.1** is commenced, [Sturdy] is irrevocably authorized (in its own name or in the names of [Rosenfeld and Huf] or otherwise), . . . to . . . take such other actions (including, without limitation, *voting the Subordinated Debt*) as it may deem necessary or advisable." App. at 52 (emphasis added). Section 3.1 specifically lists "reorganization" as a triggering event. Here, Coastal has petitioned for reorganization under Chapter 11—the very title of that Chapter. To argue otherwise is a word warp of clear contract language.

**2.** The Objectors also argue that the Bankruptcy Court improperly allowed them to be put into a class separate from the other unsecured creditors. The plan created five classes. Class III was composed of general unsecured creditors whereas Class IV was composed only of the Objectors and other former shareholders. The Bankruptcy

---

executed under questionable circumstances. These issues were never raised before the Bankruptcy Court and also are waived. *See In re Kaiser Grp. Int'l Inc.*, 399 F.3d at 565. Moreover, both arguments are unpersuasive. As to the former, § 3.1 of the Agreement clearly provides that in the event of a "reorganization . . . any payment. . . which would otherwise be payable or deliverable with respect to the Subordinated Debt[] shall be paid or delivered directly to [Sturdy] for application [to] . . . the Senior Debt . . . ." As to the latter, there is nothing in the record supporting a claim of questionable circumstances.

Court held that, because the Objectors were subject to the Agreement, separate classification was proper. We agree.[7]

Section 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Although not explicit in § 1122, a corollary to that rule is that the "grouping of similar claims in different classes" is permitted so long as the classification is "reasonable." *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987).

As the District Court explained, there is nothing unreasonable about placing the Objectors in a separate class from the other unsecured creditors because their claims, unlike the other unsecured claims, were uniquely subject to the Agreement. Moreover, as that Court noted, because Sturdy was allowed to vote the Objectors' debt, any error in the classification scheme was harmless: Sturdy would have voted to approve the Objectors' claims regardless of the classification and would have agreed to less favorable treatment than the other claims in the class had the claims been in Class III.

---

[7] The Objectors argue for a mixed standard of review, whereby facts are reviewed for clear error and legal issues *de novo*. *See In re Greystone III Joint Venture*, 995 F.2d 1275, 1281 n.7 (5th Cir. 1992). Coastal argues that we should apply the abuse-of-discretion standard. *See In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) ("The Bankruptcy Court has 'broad discretion' to decide if a plan satisfies [§ 1122(a)], and we will uphold a plan's classification scheme so long as it is 'reasonable' and does not 'arbitrarily designate classes.'") (quoting *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987)). We would affirm the classification scheme under either standard of review.

9

**3.** The District Court affirmed the Bankruptcy Court's determination that the plan was feasible. The latter's determination that a plan is feasible is reviewed for clear error, *In re DBSD N. Am. Inc.*, 634 F.3d 79, 106 (2d Cir. 2011), and should not be overturned unless the factual findings are "completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data," *Shire U.S., Inc. v. Barr Labs, Inc.*, 329 F.3d 348, 352 (3d Cir. 2003) (internal quotation marks and citation omitted). The Objectors argue that those Courts were wrong and that the plan was not feasible. This argument also fails.

Section 1129(a)(11) codifies the feasibility requirement and requires a demonstration by the plan proponent that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The Objectors' sole argument is that, because Coastal had a low monthly profit margin, the plan was not feasible. However, the Bankruptcy Court determined that the income was sufficient, and Coastal provides no compelling reason to believe that determination was clearly erroneous.

\* \* \* \* \*

We thus affirm in all respects.

10